[Dkt. No. 20]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| LORRAINE SAPP, | |
| Plaintiff, | Civil No. 15-8591 (RMB/AMD) |
| v. | **OPINION** |
| PREMIER EDUCATION GROUP, LP; SHARMONE WOODS; LORI BILDER; HARRIS SCHOOL OF BUSINESS STAFF 1-50, | |
| Defendants. | |

APPEARANCES:

**Peter M. Kober**
1876 Greentree Road
Cherry Hill, NJ 08003
    *Attorney for Plaintiff*

**Kevin C. Donovan**
Wilson Elser Moskowitz Edelman & Dicker
200 Campus Drive
Florham Park, NJ 07932
    *Attorney for Defendants*

**BUMB**, United States District Judge:

This action was filed by Plaintiff Lori Bilder ("Plaintiff") on December 14, 2015 against Defendant Premier Education Group LP ("Harris School of Business") and two employees of the Harris School of Business, Defendants Lori Bilder and Sharmone Woods (the "Individual Defendants" and

collectively referred to as "Defendants").[1]  On February 10,
2016, Plaintiff filed an amended complaint against Defendants.
Amended Complaint ("Am. Compl.") [Dkt. No. 17].  Currently
before the Court is a motion by Defendants to partially dismiss
the Amended Complaint.  Mot. to Dismiss [Dkt. No. 20].

Also before the Court, as raised in Plaintiff's responsive
briefing to the motion to dismiss, is a motion seeking leave to
file a Proposed Second Amended Complaint, which is attached as
an exhibit.  Pl.'s Br. Ex. [Dkt. No. 22-1] ("Prop. 2d Am.
Compl.").  Finally, as raised in the reply and supplemental
briefing, the Court is confronted with a request for sanctions
by Defendants in regard to the conduct of Plaintiff's counsel as
it relates to the filing of fully-developed pleadings in this
case.

For the reasons set forth below, the Court **GRANTS**
Defendants' motion to partially dismiss the Amended Complaint.
The Court **DENIES** Plaintiff's request for leave to file the
Proposed Second Amended Complaint.  Finally, the Court **DENIES**
Defendants' request for monetary sanctions at this time against

---

[1] The Amended Complaint also states claims against Harris School
of Business Staff 1-50, but does not allege conduct by these
defendants separate and apart from that of the Individual
Defendants.  As such, the claims against these anonymous
defendants are dealt with in the same manner as the Individual
Defendants.

Plaintiff's counsel, but does admonish him for his conduct in this case, which has caused needless waste.

## I.   <u>FACTUAL BACKGROUND</u>[2]

On May 30, 2014, after meeting with an admissions officer for Harris School of Business, Plaintiff elected to enroll in its multi-skill health technician program at the facility located in Voorhees, New Jersey.  Am. Compl. ¶¶ 8-10.  This program, as Plaintiff describes it in the Amended Complaint, enables its enrollees to be trained for careers as a nurse's aide, phlebotomist, or EKG technician.  <u>Id.</u> ¶ 11.  At the time of her initial meeting with the admissions officer, Plaintiff informed him that she "had a record of physical or mental impairment that substantially limited one or more of her major life activities" and that "she was collecting a check from Social Security for disability."  <u>Id.</u> ¶¶ 13-14.[3]  In addition, Plaintiff completed a Harris School of Business form in which

---

[2] The facts recited herein are derived from Plaintiff's Amended Complaint.  The Court will and must accept Plaintiff's well-pled allegations as true for purposes of this motion to dismiss.  <u>See</u> <u>Bistrian v. Levi</u>, 696 F.3d 352, 358 n. 1 (3d Cir. 2012).
[3] Plaintiff also alleges a back-and-forth exchange of documents between herself and the admissions officer concerning her status under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The Court does not include extensive discussion of these allegations in its recitation of the facts because Plaintiff has conceded her Rehabilitation Act claim in her briefing as to the Individual Defendants, and Defendants have not moved to dismiss the claim against Harris School of Business.  Pl.'s Br. in Opp. 2.

she disclosed that she was currently under a doctor's care for depression.  Id. ¶ 20.

At the time of her enrollment, Plaintiff and Harris School of Business also executed an enrollment agreement.  Id. ¶ 24. Plaintiff alleges that in that enrollment agreement, Harris School of Business promised to comply with all its policies as outlined in the catalog and its attachments.  Id. ¶ 25.  One statement made in the Student Handbook at that time was:

> [Harris School of Business] schools are committed to the success (and has high expectations) of every matriculated student.  All faculty and staff are committed to the development of student's enhanced self-esteem, self-direction, personal values and ethics in relation to building a community of professionals with an interest in life-long learning.

Id. ¶ 26.  Plaintiff also alleges that the Student Handbook represented that Harris School of Business staff "were committed to ensure that otherwise qualified students with disabilities were not counseled toward more restrictive career objectives than were nondisabled students with similar interests and abilities."  Id. ¶ 83.

Plaintiff commenced her coursework in July 2014, which initially consisted of a module covering anatomy and physiology, medical law and ethics, and patient care.  Id. ¶ 30.  Plaintiff alleges that her instructor for the patient care module became ill during her classes.  As a result, the instructor was unable to finish teaching the module and a substitute teacher was

4

arranged, whom Plaintiff baldly avers was "inadequate."  Id. ¶¶
30-33.  "As a direct and proximate result of the inadequacy of
the substitute(s) supplied, Plaintiff was not properly trained
in patient care."  Id. ¶ 36.

After completing her first module and a second on CPR,
Plaintiff moved on to a module in phlebotomy.  Id. ¶ 42.
Plaintiff alleges that it was the instructor of this module's
practice to task students with getting practice at phlebotomy
through lining up volunteers from class for "live sticks."  Id.
¶ 43.  Plaintiff was unable to secure volunteers from class to
practice live sticks, and her instructor did not assist
Plaintiff in finding any.  Id. ¶¶ 44-45.  Plaintiff thus avers
she was unable to get as much practice as her classmates with
"live sticks."  Id. ¶ 45.  Nevertheless, at the conclusion of
the module, Defendant Woods — an employee of Harris School of
Business — offered Plaintiff the opportunity to take the test to
become a certified phlebotomy technician.  Id. ¶ 47.  Plaintiff
took and passed this test and was credentialed as a certified
phlebotomy technician by the National Healthcareer Association.
Id. ¶¶ 48-50.

In addition to other modules, which Plaintiff alleges she
completed satisfactorily, students at the Harris School of
Business must complete a 160-hour externship program.  Id. ¶ 54.
Depending on the field of study, students "serve an average of

three months in their career field." Id. ¶ 56.  Placement,
which is governed by externship agreements with off-campus
externship sites, is the result of a cooperative effort between
Harris School of Business "and various off campus health
facilities with whom [Harris School of Business staff] maintain
individual relationships." Id. ¶¶ 58-59.  As Plaintiff alleges
in the Amended Complaint, "[v]arious of these off-campus
externship sites have special requirements which could *delay
externship placement.*" Id. ¶ 59 (emphasis in original).
Indeed, as Plaintiff alleges, "externship placement could be
delayed because of special requirements at the site and/or
availability at the site." Id. ¶ 61.

     At the outset of her externship placement process,
Plaintiff met with Ms. Bilder, an employee of Harris School of
Business, concerning her externship placement. Id. ¶ 63.  At
that time, Plaintiff informed Ms. Bilder that she wished to put
her phlebotomy skills to work, and she conveyed her desire to
receive an externship in the field of phlebotomy. Id. ¶ 64.
Ms. Bilder and other members of the Harris School of Business
staff arranged for Plaintiff to serve as an extern at Labcorp, a
phlebotomy site. Id. ¶¶ 66-67.  However, at a subsequent
December 22, 2014 meeting, Plaintiff was informed that she
"needed to come in for phlebotomy skills sharpening, needed to
be more hygenic, and would not be going to Labcorp." Id. ¶ 68.

Plaintiff does not allege any other reasons were given for rescinding her placement.

On January 12, 2015, Plaintiff attended her required phlebotomy skills sharpening and evaluation, which she passed. Id. ¶¶ 69-71.  By that point, however, Ms. Bilder and other Harris School of Business employees were unable to place Plaintiff at Labcorp because "the last externship opening at Labcorp had been filled by a different [Harris School of Business] student."  Id. ¶¶ 72-73.  Plaintiff broadly contends that Harris School of Business "failed to have a policy in place which would enable them to act in a manner consistent with [their] commitment to the success of every matriculated student and commitment to the development of each student's enhanced self-esteem, self-direction, personal values and ethics . . . ." Id. ¶ 75.

Nevertheless, despite the unavailability of a placement at Labcorp, Ms. Bilder and Ms. Woods were able to place Plaintiff in a different non-phlebotomy externship assignment that was to begin the very next day, January 13, 2015.  Id. ¶ 76. Plaintiff, however, expressed her displeasure at this externship.  Id. ¶ 80.  Indeed, Plaintiff alleges, again baldly, that the failure to place her in her desired externship program fundamentally altered the nature of the educational program and services she was offered and counseled her toward a more

7

restrictive career path than non-disabled students.  Id. ¶¶ 84-86.  As Plaintiff alleges, "the reasonable alternative available to Defendants . . . was to offer Plaintiff a free refresher course in phlebotomy in the spring semester and priority placement for her externship at Labcorp in the spring of 2015." Id. ¶ 94.  Ultimately, although Plaintiff attended the externship she was provided with, it "did not go favorably" for her.  Id. ¶ 96.  Having failed to complete the 160-hour externship requirement, Plaintiff was dismissed from Harris School of Business on March 17, 2015.[4]  Id. ¶ 98.  Notably, Plaintiff does not allege that her failure to complete the externship requirement was the fault of Defendants.  Rather, Plaintiff seems to imply through her allegations that she would have completed the Labcorp externship.  She provides no facts to bolster this claim.

## II.  PROCEDURAL BACKGROUND OF INSTANT MOTIONS

After the initial complaint in this case was filed in December 2015, Defendants filed a letter requesting a pre-motion conference before this Court, pursuant to this Court's

---

[4] While Plaintiff alleges that Harris School of Business provides for academic modifications under the 2013 Student Handbook, which includes "changes in the length of time permitted for the completion of degree requirements," id. ¶ 87, and that requests for such modifications can be made orally, Plaintiff does not allege that she actually asked for such a modification.

Individual Judicial Preferences & Procedures I.A.[5]  Defs.' Jan.
12, 2016 Ltr. [Dkt. No. 12].  In Defendants' letter, Defendants
identify a number of purported pleading deficiencies:

- Plaintiff failed to establish that [Ms. Bilder and Ms.
  Woods] can be held liable under Section 504 [of the
  Rehabilitation Act] and/or the ADA as a matter of law;

- Plaintiff has failed to allege the requisite "state
  action" necessary to support her state and federal
  constitutional claims;

- Plaintiff's breach of contract claims fail[] as a
  matter of law because [Harris School of Business's]
  educational manuals and policies cannot create a
  contractual relationship with Plaintiff; and

- Plaintiff failed to allege that Defendants engage in
  'unlawful conduct' or that she suffered an
  'ascertainable loss' as required by the NJCFA.

Id. at 1.

     In response to this letter, Plaintiff flouted her duties
under this Court's rules, which seek to promote the expeditious
resolution of cases.  See Pl.'s Jan. 22, 2016 Statement in Resp.
[Dkt. No. 13].  Instead of conceding non-viable claims or
identifying pertinent authorities and relevant portions of the
pleadings to argue against dismissal, Plaintiff stated — for

---

[5] This procedure of the Court provides that in most
circumstances, prior to the filing of a motion to dismiss, the
moving party shall file a short letter with the Court "set[ting]
forth the basis for the anticipated motion and include citations
to relevant authority."  The non-moving party thereafter must
file a responsive letter addressing those contentions.  These
letters permit the Court the opportunity to resolve the dispute,
to the extent possible, prior to the filing of extensive motion
papers.

instance — that the Rehabilitation Act and ADA claims
"require[d] the opportunity for adequate briefing on the part of
Plaintiff." Id. at 1.  With regard to other claims, Plaintiff
requested the opportunity to amend the complaint in light of
Defendants' letter.  Seeking to avoid resolving a motion to
dismiss if an amendment was on the immediate horizon, the Court
directed Plaintiff to amend the complaint.  Plaintiff complied,
although despite the Court's observation that the allegations in
the original complaint were "woefully deficient," Jan. 25 Order
[Dkt. No. 14], Plaintiff's changes in the Amended Complaint were
minimal.  Unfortunately, the Court was unable to facilitate
moving the case forward through adherence to its rules, and thus
the Court waived the need for a further letter in compliance
with its Individual Judicial Preferences and Procedures.

As noted, supra, the instant motion to partially dismiss
the Amended Complaint was filed on March 1, 2016.  Because the
Amended Complaint was substantially identical to the complaint,
many of the arguments in the instant motion in favor of
dismissal were unchanged from Defendants' pre-motion conference
letter.  In Plaintiff's responsive pleading, Plaintiff concedes
at least three different causes of action, some for reasons
identified in the pre-motion conference letter.  See, e.g.,
Pl.'s Br. 2, 3, 12 (conceding Section 504 claims against
individual defendants and breach of contract claim).  Plaintiff

10

further offered, once again, to amend the complaint to cure any other deficiencies that might be present.  See, e.g., id. at 8 ("Any ambiguity in the complaint can be cured by an amended complaint.").  Finally, having admitted the non-viability of her breach of contract claim, Plaintiff also suggested amending to "assert a claim for violation of her common law right to fundamental fairness," a previously unmentioned claim.  Id. at 12.  In support of Plaintiff's efforts to amend, Plaintiff attached as an exhibit to her motion to dismiss briefing a Proposed Second Amended Complaint, which the briefing requests leave to file.  See, e.g., id. (the "Proposed Second Amended Complaint").

In Defendants' reply brief, Defendants not only reply to Plaintiff's affirmative contentions that some claims are adequately pled, but also argue that this Court should not grant leave to Plaintiff to file the Proposed Second Amended Complaint.  See Defs.' Rep. Br. 9-12.  Additionally, Defendants move this Court to issue sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, which provides: "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Id.  By order of the Court, see Apr. 11, 2016 Order [Dkt. No. 24], the

parties submitted additional briefing on the issue of sanctions as raised in Defendants' reply brief.  See Pl.'s Sur-Reply Br. [Dkt. No. 25]; Defs.' May 3, 2016 Ltr. [Dkt. No. 26].

## III. LEGAL STANDARDS

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. at 662.  "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss.  Id. at 678.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the

plaintiff." Bistrian v. Levi, 696 F.3d 352 n.1 (3d Cir. 2012).
Only the allegations in the complaint, and "matters of public
record, orders, exhibits attached to the complaint and items
appearing in the record of the case" are taken into
consideration. Oshiver v. Levin, Fishbein, 38 F.3d 1380, 1384
n.2 (3d Cir. 1994) (citing Chester Cnty. Intermediate Unit v.
Penn. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

The standard with regard to a motion seeking leave to file
an amended complaint is related.  Federal Rule of Civil
Procedure 15(a) governs such motions and provides that "[t]he
court should freely give leave when justice so requires."  Id.
As such, a court should only deny leave to amend the pleadings
"where there is 'bad faith or dilatory motive, truly undue or
unexplained delay, repeated failure to cure deficiencies by
amendments previously allowed or futility of amendment.'"
Ferrante v. Amgen, Inc., No. 13-07344, 2014 WL 1092555, at *2
(D.N.J. Mar. 18, 2014) (quoting Long v. Wilson, 393 F.3d 390,
400 (3d Cir. 2004)).  An amendment is futile and amendment
should be denied where "the complaint, as amended, would fail to
state a claim upon which relief could be granted."  In re
Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d
Cir.1997); see also Great Western Mining & Mineral Co., 615 F.3d
159, 175 (3d Cir. 2010).  "A court assessing 'futility' 'applies

the same standard of legal sufficiency' employed in the Rule 12(b)(6) context." <u>Ferrante</u>, 2014 WL 1092555, at *2.

IV.  <u>**ANALYSIS**</u>

A.  <u>**Defendants' Motion to Dismiss and Plaintiff's Motion for Leave to File the Proposed Second Amended Complaint**</u>

Defendants' partial motion to dismiss challenges the sufficiency of several of Plaintiff's causes of action. Specifically, Defendants move to dismiss Plaintiff's causes of action for: (i) violation of the Americans with Disabilities Act ("ADA") against the Individual Defendants,[6] (ii) violation of state and federal constitutional substantive due process and equal protection rights, (iii) breach of contract, and (iv) violation of the New Jersey Consumer Fraud Act ("NJCFA").  In response, Plaintiff has affirmatively opposed some of Defendants' arguments and conceded others.  Where Plaintiff has opposed Defendants' arguments based on the allegations contained in the operative pleading (the Amended Complaint), this Court evaluates the sufficiency of the causes of action under the Federal Rule of Civil Procedure 12(b)(6) standard.

---

[6] Count I of the Amended Complaint states a cause of action against Ms. Woods, Ms. Bilder, and Harris School of Business under Section 504 of the Rehabilitation Act of 1973.  In Plaintiff's responsive briefing, this claim is conceded as to the Individual Defendants, Ms. Woods and Ms. Bilder.  Pl.'s Br. 2.  Defendants have not moved to dismiss the Rehabilitation Act claim against Harris School of Business.

However, as noted, <u>supra</u>, Plaintiff has also filed a Proposed Second Amended Complaint, which Plaintiff argues cures some deficiencies in the Amended Complaint.  Because Defendants have treated this unorthodox exhibit as a motion seeking leave to file an amended pleading in the reply briefing, the Court will consider the allegations in the Proposed Second Amended Complaint, to the extent they differ from the Amended Complaint. As such, where appropriate, the Court will identify the new allegations set forth in the Proposed Second Amended Complaint and discuss the merits of Defendants' arguments against permitting amendment as they relate to futility, bad faith and undue delay.

### i. **Plaintiff's ADA Claim**

Plaintiff concedes that the facts set forth in the Amended Complaint fail to state a claim for violation of Title III of the ADA (Count II) against Ms. Bilder and Ms. Woods.  See Pl.'s Br. 3.  As such, Defendants' motion to dismiss this claim is GRANTED.  Nevertheless, Plaintiff additionally argues that the Proposed Second Amended Complaint cures these deficiencies with regard to Ms. Woods.  In response, Defendants contend that the amendment would be futile because it has not been sufficiently alleged that Ms. Woods "operates" the educational facility. Defs.' Rep. Br. 10-11.

In order to state a claim under the ADA in the educational
context, a plaintiff must allege that "(1) [s]he has a
disability, or was regarded as having a disability; (2) [s]he
was 'otherwise qualified' to participate in school activities;
and (3) [s]he was 'denied the benefits of the program or was
otherwise subject to discrimination because of [her]
disability.'" D.E. v. Central Dauphin School District, 765 F.3d
260, 269 (3d Cir. 2014) (quoting Chambers v. Sch. Dist. of
Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009)).  When a
Title III claim is brought against an individual defendant,
liability only exists where it is shown that the defendant owns,
leases, or operates the place of public accommodation.  Emerson
v. Thiel College, 296 F.3d 184, 188-89 (3d Cir. 2002)
(dismissing defendants from the case who did not "operate" the
institution in that they did not control or direct the
functioning or conduct the affairs of the defendant college).

Focusing on the issue of whether an individual defendant
"operates" a place of public accommodation, the court in Emerson
noted that the issue was one of first impression in the Third
Circuit.  296 F.3d at 188.  In that case, the individual
defendants accused of violating Title III of the ADA included
the former college president, vice president of academic
affairs, and several professors of the defendant college.  Id.
at 186.  In determining whether these defendants operated the

college, the court looked favorably to the Fifth Circuit
decision, Neff v. American Dairy Queen Corp., 58 F.3d 1063, 1066
(5th Cir. 1996), which defined the term "operate" with two
definitions, "to control or direct the functioning of" and "to
conduct the affairs of."  Emerson, 296 F.3d at 189.  The Emerson
court, applying these two definitions, albeit with little
elaboration, held that "the individual college defendants and
Brown do not operate Thiel and thus are not subject to
individual liability under Title III of the ADA."  Id.

In the instant case, Plaintiff's Proposed Second Amended
Complaint alleges two "facts" concerning whether Ms. Woods
"operated" Harris School of Business's facility.  Plaintiff
alleges that Ms. Woods: (1) was the Director of Education for
Harris School of Business and (2) had "responsibility to control
or direct the functioning of, or conduct the affairs of, all
aspects of education at the facility" Plaintiff attended.  Prop.
Sec. Am. Compl. ¶ 3.  Defendants contend that this amendment
would be futile in stating a violation of Title III of the ADA
because the plaintiff in Emerson did not state claim against
individual defendants for violating Title III of the ADA even
when those defendants were high-ranking officials, including the
former president and vice president of academic affairs of the
defendant college.  Defs.' Rep. Br. 10-11 (citing Emerson, 296
F.3d at 190).

17

The Court agrees with Defendants' argument.  Plaintiff's
allegations are simply that Ms. Woods was the Director of
Education for Harris School of Business and the conclusory
allegation — parroting the legal standard, with no factual
nuance — that she had the responsibility to control or direct
the functioning of the facility Plaintiff attended.  While Ms.
Woods' title could be consistent with the fact that she operated
the place of public accommodation, in the same way "president"
of a college might be consistent with that conclusion, the title
"Director of Education" does not plausibly allege operation in
and of itself.  Moreover, even considering her title, the
restatement of the Emerson court's definition of the term
"operate" is also insufficient for purposes of plausibly
alleging Ms. Woods operated the facility.  Plaintiff does not
allege Ms. Woods' duties with sufficient factual detail to rise
above a "formulaic recitation" of the requirement.  Twombly, 550
U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286
(1986)).  Absent any nuance in the allegations suggesting Ms.
Woods operated the entire Harris School of Business campus
Plaintiff attended, Plaintiff's bare-bones allegations do not
plausibly state a cause of action against Ms. Woods.
Accordingly, Plaintiff's motion seeking leave to amend the

complaint and state a cause of action against Ms. Woods for violation of Title III of the ADA is **DENIED**.[7]

### ii. Plaintiff's Constitutional Claims

Defendants next move to dismiss Plaintiff's constitutional claims alleging violations of her substantive due process rights and right to equal protection.  First, Defendants argue that Counts III, IV, VI, and VII of the Amended Complaint should be dismissed because Plaintiff has failed to state a cause of action under 42 U.S.C. § 1983 or the New Jersey Civil Rights Act ("NJCRA"), which requires allegations that defendants are state actors.  Second, Defendants argue that Plaintiff has not stated a cause of action for violation of her substantive due process rights (Count IV and VII) under the United States Constitution because she has not alleged a fundamental liberty interest was deprived.  Third, Defendants argue that Plaintiff has not stated a claim for violation of her right to equal protection under both the United States and New Jersey constitutions (Counts III

---

[7] Because the Court finds that amendment would be futile, the Court does not reach the issue of whether Plaintiff's motion seeking leave to amend the Amended Complaint should be denied due to bad faith or undue delay as to this cause of action. Should Plaintiff seek leave to amend at some point in the future to more specifically allege Ms. Woods' duties, the Court, upon Defendants' request, will revisit the issue of whether amendment should be permitted at that time due to any bad faith or dilatory conduct.

and VI) because she has not alleged similarly situated individuals were treated differently.

1. **State Action**

With regard to Counts III, IV, VI, and VII of the Amended Complaint, which purport to state causes of action against the Individual Defendants for violation of Plaintiff's constitutional rights to equal protection and substantive due process, the mechanism by which Plaintiff seeks redress is 42 U.S.C. § 1983 and the NJCRA, N.J.S.A. 10:6-2(c). Defendants argue that Plaintiff has failed to state a viable cause of action for any of these counts because she has not alleged that Ms. Woods, Ms. Bilder, or any staff member of Harris School of Business was a state actor.

In order to state a cause of action for violation of constitutional rights, both Section 1983 and the NJCRA require allegations that the defendant was a state actor. Moe v. Seton Hall University, No. CIVA 2:09-01424, 2010 WL 1609680, at *3 (D.N.J. Apr. 20, 2010) ("Generally, [federal and state] procedural and substantive due process rights 'protects individuals only against government action.'") (quoting Biener v. Calio, 361 F.3d 206, 216 (3d Cir. 2004); Hernandez v. Don Bosco Preparatory High, 322 N.J. Super. 1, 11 (1999) (holding that, under New Jersey and United States Constitutions, private school was "only bound to the constitutional requirements of due

process if the private school has substantial involvement with the state."); Hottenstein v. City of Sea Isle, Civ. A. No. 11-740 (JEI/JS), 2011 WL 3651302, at *4 (D.N.J. Aug. 18, 2011) ("[T]his district has repeatedly interpreted NJCRA analogously to § 1983") (quoting Pettit v. New Jersey, Civ. A. No. 09-cv-3735 (NLH), 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011)).  In order to survive a motion to dismiss, a Plaintiff must do more than conclusorily allege that an individual was a state actor. See Moe, 2010 WL 1609680, at *3 ("If Plaintiff is going to allege a due process claim, she must allege state action, and concrete facts in support of state action, rather than mere formulaic allegations . . . .").  Instead, a plaintiff must allege "concrete facts," id., showing that "there is such a close nexus between the state and the challenged action that seemingly private behavior may be fairly treated as that of the state itself."  Hottenstein, 2011 WL 3651302, at *4 (quoting Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009)).  There are several tests for determining whether the conduct alleged is sufficient to support holding private conduct to be legally conduct of the state:

> (1) [W]hether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that

21

it must be recognized as a joint participant in the challenged activity.

Id. Under the third test, "[t]he State will be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State." Kach, 589 F.3d at 648.

In support of her constitutional claims, Plaintiff alleges conclusorily that Ms. Woods, Ms. Bilder and unnamed Harris School of Business staff members "were state actors." Am. Compl. ¶ 108. Plaintiff additionally alleges that some unspecified portion of Plaintiff's tuition was paid by federal funds. Id. ¶ 28. Unlike the plaintiff in Moe, who — albeit unsuccessfully – alleged that the university was the recipient of "state aid, state funding, and [engaged in] activities that [were] entwined with the state and state functions . . . so as to be considered a state actor," 2010 WL 1609680, at *3, Plaintiff in the instant case does not even go as far to allege the receipt of state funding by Harris School of Business or its employees beyond a portion of tuition being comprised of federal funds.[8]

---

[8] Given the disposition in Moe, which found that the general allegation of receipt of state funding was not enough to allege a nexus sufficient to support state action, even if Plaintiff had made such an allegation, it would not be enough to revive Plaintiff's constitutional claims.

Instead, Plaintiff argues that the third test for treating private conduct as state conduct should permit the claims to proceed:

> Whether there is a nexus between the challenged action, and the state's exercise of coercive power or provision of significant encouragement, either over or covert, is unknown at this point.  It is submitted that it is 'plausible' that such facts *may* be uncovered in discovery.  If no supporting facts are revealed in discovery, Defendants can renew their argument on this Point [sic] at the summary judgment stage.

Pl.'s Br. 10 (emphasis in original).  Plaintiff offers no explanation of why it is "'plausible' that such facts *may* be uncovered in discovery."  Plaintiff does not allege facts to support what might be uncovered.  Nor does Plaintiff allege any action by any defendants that might be suggestive of a nexus worthy of exploration through discovery.

Plaintiff's bare allegations regarding state action, and the insufficiency of the arguments in support of those allegations, demonstrate that Defendants' motion to dismiss the constitutional claims should be granted.  The conclusory allegation that Ms. Woods and Ms. Bilder were state actors does not defeat a motion to dismiss.  Moe, 2010 WL 1609680, at *3 (holding that a plaintiff must state "concrete facts in support of state action").  In State v. Schmid, 84 N.J. 535 (1980), the Supreme Court of New Jersey, confronted with allegations of violations of a plaintiff's First Amendment rights, sought to

determine whether Princeton University qualified as a private actor.  After reviewing the record, the Court found that the record showed Princeton was state-accredited, owned tax-exempt buildings, received state budgeted funds, and employed security officers deputized to make arrests.  Id. at *547.  "Nevertheless, this congeries of fact does not equate with state action on the part of Princeton University.  Princeton University is, indisputably, predominantly private, unregulated and autonomous in its character and functioning as an institution of higher education."  Id. (citation omitted).  Plaintiff has not come close to alleging this manner of state-private entity connection in her Amended Complaint, and even if she had, Schmid would hold it insufficient.

Plaintiff's argument concerning the need for discovery to develop the state nexus is also the exact argument that was properly rejected in Moe.  In that case, the plaintiff requested discovery concerning the "financial ownership, management and control issues" which were wholly within defendants' knowledge and possession.  The Court reasoned that the plaintiff's argument "that detailed factual allegations as to state action must await discovery because the facts are wholly within Defendants' possession," was "precisely the sort of claim that was rejected by the Supreme Court in Twombly."  Moe, 2010 WL 1609680, at *3.  The outcome should be no different here:

24

Plaintiff must affirmatively allege plausible state action
before subjecting Defendants to the costs of discovery.
Twombly, 550 U.S. at 559-60 & n.6 (explaining that only by
enforcing pleading standards prior to discovery can courts "hope
to avoid the potentially enormous expense [] in cases with no
reasonably grounded hope that the discovery process will reveal
relevant evidence") (citation and internal quotation marks
omitted).

In light of the abject lack of any specific allegations
concerning state action, the Court GRANTS Defendants' motion to
dismiss all three of Plaintiff's constitutional causes of action
contained in Counts III, IV, VI, and VII of the Amended
Complaint.  To the extent Plaintiff is able to amend these
allegations in a future pleading to more specifically plead
state action (and cure the other deficiencies), she may seek
leave of the Court to do so.

### 2. **Substantive Due Process**

Even if Plaintiff had sufficiently alleged state action,
Plaintiff has additionally failed to allege a fundamental
liberty interest violated by the Individual Defendants' conduct.
The Due Process Clause "protects certain 'fundamental liberty
interests' from deprivation by the government," but "[o]nly
fundamental rights and liberties which are deeply rooted in this
Nation's history and tradition and implicit in the concept of

ordered liberty qualify for such protection." <u>Chavez v.</u>
<u>Martinez</u>, 538 U.S. 760, 775 (2003).  Because the "guideposts for
responsible decisionmaking in this unchartered area are scarce
and open-ended," the Supreme Court has expressed reluctance to
expand the doctrine and has held that a "careful description" of
the asserted fundamental liberty interest is required.
<u>Washington v. Glucksberg</u>, 521 U.S. 702, 721 (1997).  "Vague
generalities" will not suffice.  <u>Chavez</u>, 538 U.S. at 776.

In opposition to Defendants' motion to dismiss, Plaintiff
clarifies that she was deprived of two fundamental liberty
interests.[9]  First, Plaintiff argues that her right to be free
from arbitrary governmental action was violated.  Second,
Plaintiff argues that her right to pursue her chosen occupation
was violated.

With regard to the right to be free from arbitrary
governmental action, the Supreme Court has emphasized that "the
touchstone of due process is protection of the individual
against arbitrary action of the government." <u>Cnty. of</u>
<u>Sacramento v. Lewis</u>, 523 U.S. 833, 845 (1998).  However, as both

---

[9] While the Court finds that even these arguments raised for the
first time in Plaintiff's responsive briefing would not be
enough to salvage Plaintiff's substantive due process claim, the
Court feels compelled to note that Plaintiff is not permitted to
amend any pleading through briefing.  <u>Penn. v. Pepsico, Inc.</u>,
836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the
complaint may not be amended by the briefs in opposition to a
motion to dismiss.").

the Supreme Court and Third Circuit have remarked, "only the
most egregious official conduct can be said to be arbitrary in
the constitutional sense." Id.; Schieber v. Philadelphia, 320
F.3d 409, 417 (3d Cir. 2003) (quoting Sacramento, 523 U.S. at
846).  Plaintiff argues that by placing her in an externship
other than her chosen one of phlebotomy, Defendants acted
arbitrarily.  Pl.'s Br. 5-6.

Under no reading of the allegations contained in the
Amended Complaint does Plaintiff state any conduct that comes
anywhere close to "egregious" for purposes of violating her
substantive due process rights.  Plaintiff was offered an
internship in phlebotomy, which she was ultimately unable to
participate in when staff members determined she needed to take
additional coursework in order to participate in it.  Am. Compl.
¶ 68.  Indeed, Plaintiff concedes that Defendants carefully
select internship placement sites, and that "various of these
off campus externship sites have special requirements which
could delay externship placement."  Am. Compl. ¶¶ 59-60.  The
fact that externship availability prevented Plaintiff from being
placed at Labcorp, or the fact that the Individual Defendants
did not take the exact course of conduct Plaintiff demanded and
now calls reasonable, Am. Compl. ¶¶ 92-94,[10] is a far stretch

---

[10] Plaintiff contends that the "reasonable alternative available
to Defendants Bilder and Woods was to offer plaintiff a free

from conduct that can be characterized as arbitrary or conscience shocking in a constitutional sense, even if this were to have happened at a public university.  Plaintiff certainly has pointed to no legal or policy obligation that guarantees Plaintiff the externship she wanted.  See generally Kalick v. U.S., 35 F. Supp. 3d 639, 646-47 (D.N.J. 2014) (noting in substantive and procedural due process context that "the Supreme Court has recognized the substantial discretion of school authorities in state-operated universities regarding the completion of program requirements and the award of academic degrees.").  To put it differently, not every personal setback experienced in life provides fertile ground upon which to allege a violation of constitutional rights.  Sometimes, a bad break like not getting your preferred externship placement is just a bad break.  As they now stand, Plaintiff's allegations do not cross the line into constitutional dispute.

Plaintiff fairs no better alleging her fundamental liberty interest to pursue employment in a chosen profession was deprived.  In so arguing, Plaintiff relies upon a series of cases standing for the proposition that "the right to work for a living in the common occupations of the community is of the very

---

refresher course in phlebotomy in the spring semester and priority placement for her externship at Labcorp in the spring of 2015."  Pl.'s Br. 6.

essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." Piecknick v. Penn., 36 F.3d 1250, 1259 (3d Cir. 1994) (quoting Truax v. Raich, 239 U.S. 33, 41 (2015)); see also id. ("[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments.") (citation omitted).

Plaintiff principally quotes language from Piecknick in arguing in opposition to dismiss, which is noteworthy, because that case resulted in a dismissal of the plaintiff's cause of action alleging due process violations. Id. at 1262; Pl.'s Br. 5. In that case, the plaintiff sued the Commonwealth of Pennsylvania, the state police and several state officers because the police were failing to follow a guideline that directed which of several towing companies would be called for jobs within a given area. Plaintiff claimed a liberty or property interest to receive certain jobs within its zone. 36 F.3d at 1254. The court, ruling that no liberty interest had been alleged, noted "[t]his case is distinguishable from those in which a person's license to pursue a chosen occupation is revoked or substantially interfered with, or where there is harm to an individual's reputation." Id. at 1261 (citations omitted). The instant case is no different: Plaintiff has not

alleged that she is unable to work as a phlebotomist, but only that she was denied the opportunity to get a phlebotomy externship on one occasion as a result of Defendants' conduct, although it is not entirely clear why that conduct is unreasonable.  As the court in <u>Piecknick</u> noted, "[i]t is the liberty to pursue a particular calling or occupation and not the right to a specific job that is protected by the Fourteenth Amendment."  <u>Id.</u> at *1262.  Plaintiff has not alleged anything more than the fact that she was an unemployed student placed in one externship over her preferred one.  To call this a deprivation of a fundamental liberty interest would be an expansion of the doctrine beyond its limits.

Accordingly, even if Plaintiff had alleged state action – which she has not, and which appears to be a steep slope to climb – Plaintiff additionally has not pled a deprivation of her substantive due process rights.  As a result, this Court would additionally dismiss Plaintiff's state and federal substantive due process claims (Counts IV and VII) for this independent reason.[11]

––––––––––––––––––––

[11] It is established that "the Supreme Court of New Jersey has held that, '[i]n cases raising substantive due process claims under [the New Jersey] state constitution, this Court uses the standards developed by the United States Supreme Court under the federal constitution.  Our analysis [in these cases] 'is the same under both constitutions.'"  <u>Kadakia v. Rutgers</u>, 633 F. App'x 83, 87 n.4 (3d Cir. Dec. 3, 2015).

### 3. **Equal Protection**

Even if Plaintiff had alleged state action, this Court would also dismiss her equal protection claim because Plaintiff has failed to state a claim.  There are two ways a plaintiff may establish an Equal Protection claim:

> When (1) [s]he is a member of a protected class similarly situated to members of an unprotected class and was treated differently from the unprotected class, see Andrews v. City of Philadelphia, 895 UF.2d 1469, 1478 (3d Cir. 1990) or (2) [s]he belongs to a 'class of one' and was intentionally treated differently from others similarly situated without any rational basis.  Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. C.t 1073, 145 L.Ed.2d 1060 (2000).

Cataldo v. Moses, No. Civ. A. 02-2588 (FSH), 2005 WL 705359, at *13 (D.N.J. March 29, 2005).  The Amended Complaint does not identify which of the two pathways upon which Plaintiff seeks to bring an equal protection claim.  Her brief, however, makes clear that she seeks to bring a "class of one" discrimination claim.[12]  Pursuant to the "class of one" theory set forth by the United States Supreme Court in Olech, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Hill v. Kutztown, 455 F.3d 225, 239 (3d Cir. 2006); see also Mosca v. Cole, 217 Fed. Appx. 158, 164 (3d Cir. 2007);

---

[12] Again, it is noted that Plaintiff cannot amend her pleadings through a brief.  Pepsico, Inc., 836 F.2d at 181.

Harris v. New Jersey, Civil No. 03-2002(RMB), 2008 WL 141503, at *10 (D.N.J. Jan. 14, 2008).

Defendants contend, and this Court agrees, that Plaintiff has not alleged that similarly situated individuals were treated differently than her.  To be similarly situated, parties must be "alike in all relevant aspects."  Perano v. Township of Tilden, 423 F. App'x 234, 238 (3d Cir. 2011) (quoting Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008)). Importantly, "[a]t the motion to dismiss stage Perano must allege facts sufficient to make plausible the existence of such similarly situated parties."  Id.  Where the allegations are simply that the plaintiff "was treated differently from other similarly situated [parties,]" without more specific allegations as to those similarly situated parties, a plaintiff has not "made plausible the conclusion that those parties exist and that they are like him in all relevant aspects."  Id.

Plaintiff in this case has not even gone as far as the conclusory allegation of the existence of similarly situated individuals.  Plaintiff's complaint is devoid of allegations concerning the existence or treatment of other individuals. Plaintiff's briefing does no better and simply papers over the lack of allegations concerning similarly situated individuals by arguing only about the arbitrary treatment she received.

32

As such, even in the presence of state action, Plaintiff has failed to state an Equal Protection claim, whether under the United States Constitution (Count III) or the New Jersey Constitution (Count VI).  See Houston v. Township of Randolph, 934 F. Supp. 2d 711, at 737 n.25 (D.N.J. Mar. 21, 2013) ("Analysis of equal protection claims brought under the New Jersey Constitution usually does not diverge from that under the federal Constitution.").[13]  As such, even in the presence of state action, the Court would also dismiss the federal and state Equal Protection claims.

### iii.  **Plaintiff's Breach of Contract Claim and Common Law Fundamental Fairness Amendment**

Plaintiff "voluntarily abandons" her breach of contract claim in her responsive briefing.  Pl.'s Br. 12.  As such,

---

[13] The Court notes that the analyses for equal protection under the United States Constitution and New Jersey Constitution are not identical, although very similar.  Buck Foston's New Brunswick LLC v. Cahill, Civ. A. No. 11-03731(FLW)(TJB), 2013 WL 5435289, at *28 (D.N.J. Sep. 27, 2013) ("While the New Jersey test is not identical to that under the Federal Constitution, to a large extent, the considerations guiding our equal protection analysis under the New Jersey Constitution are implicit in the three tier approach applied by the Supreme Court Under the Federal Constitution.").  The Court is aware of, and Plaintiff has cited no additional state-law authority, suggesting that her allegations of a violation of her Equal Protection rights under state law, without allegations concerning similarly situated individuals, are any more viable.  See J.D. ex rel. Scipio-Derrick v. Davy, 415 N.J. Super. 375, 398 (2010) ("The equal protection provision in the New Jersey Constitution prohibits the state from adoption statutory classifications that treat similarly situated people differently.").

Defendants' motion to dismiss Plaintiff's breach of contract
claim (Count VIII) is GRANTED.  Plaintiff does seek leave to
amend the complaint to state a substitute cause of action for
denial of her right to common law fundamental fairness.  Prop.
2d Am. Compl. ¶ 120.  The Court analyzes this proposed amendment
under the futility standard.

A common law fundamental fairness claim based on a
contractual relationship between a private university student
and the university does exist under New Jersey law.  Moe, 2010
WL 1609680, at *4.  "The scope of review in such circumstances
is limited and is akin to the review of agency action under the
arbitrary and capriciousness standard."  Id.  In the context of
disciplinary proceedings, a student challenging the result "will
not prevail if the university adhered to its own rules, the
procedures followed were fundamentally fair, and the decision
was based on sufficient evidence."  Id.  "It is possible that an
even more deferential standard might apply where expulsion
arises in consequence of alleged academic failure, as opposed to
disciplinary proceedings."  Id.  As the Court noted in Moe, the
relevant analysis for this relationship under New Jersey law is
"not crystal clear."  Id.

Plaintiff specifically claims that her expulsion violated
her right to fundamental fairness.  Pl.'s Br. 11.  Under either
the deferential or very deferential standard used in this

34

context, id., Plaintiff has not stated a claim for denial of her right to fundamental fairness.[14]  Plaintiff has not alleged that Harris School of Business failed to follow its internal procedures in dismissing her.  The facts as alleged in the Proposed Second Amended Complaint establish only that Plaintiff was expelled from Harris School of Business because she did not complete the required 160-hour internship.  Prop. 2d Am. Compl. ¶ 97 ("Plaintiff failed to complete the required one hundred sixty hours of externship."); id. ¶ 98 ("Plaintiff was dismissed from [Harris School of Business] on March 17, 2015 for failure to complete the one hundred sixty hour externship requirement.").[15]  Plaintiff concedes this is a graduation requirement from Harris School of Business.  Id. ¶ 54 ("To graduate from the multi-skill health technician program, all students must complete a one hundred sixty hour externship.").

---

[14] Plaintiff has not alleged that Harris School of Business is a public university, and for purposes of this motion, the Court does not consider it to be one.

[15] To be sure, Plaintiff's argument in favor of permitting a claim for violation of her right to fundamental fairness is vague and not remotely tailored to the facts alleged.  This Court does note, however, Plaintiff's repeated allegation that Harris School of Business did not live up to its statement in the handbook that it was "committed to the success (and has high expectations) of every matriculated student."  Prop. 2d Am. Compl. ¶ 26.  To the extent this could possibly be conceived as an enforceable provision even in this quasi-contract setting, the deferential standard in a fundamental fairness analysis would preclude stating a claim based on the failure to "follow" this "policy."

Having failed to allege that Harris School of Business failed to follow any of its own procedures in dismissing her, and having conceded that she failed to meet the externship requirement, Plaintiff has not stated a claim for denial of her right to fundamental fairness and amendment for purposes of stating this claim would be futile.[16]

### iv.  **Plaintiff's NJCFA Claims**

Plaintiff concedes that the Amended Complaint does not state a claim for violation of the NJCFA.  As such, Defendants' motion to dismiss that cause of action (Count IX) is GRANTED. Plaintiff nevertheless seeks leave to amend her allegations for purposes of stating such a claim.  Accordingly, the Court looks to the Proposed Second Amended Complaint's allegations and the futility standard.

In order to allege a violation of the NJCFA, a plaintiff must allege each of three elements: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." Ferrell v. America's Dream Homes, Inc., Dkt. No. L. 792-04, 2010 WL 3075578, at *7 (N.J. Sup. Ct. App. Div. Mar. 15, 2010).  As

---

[16] Because the Court finds that amendment would be futile, the Court does not reach Defendants' additional arguments that amendment should be denied on bad faith or undue delay grounds.

here, where the unlawful conduct is alleged to be an affirmative
act, as opposed to an omission, "[o]ne who makes an affirmative
misrepresentation is liable even in the absence of knowledge of
the falsity of the misrepresentation, negligence, or the intent
to deceive." Arcand v. Brother Intern. Corp., 673 F. Supp. 2d
282, 297 (D.N.J. Nov. 30, 2009).  As a fraud action, however,
the heightened pleading requirements of Federal Rule of Civil
Procedure 9(b) apply to NJCFA cases.  See Harnish v. Widener
University School of Law, 931 F. Supp. 2d 641, 647. "To the
extent that [p]laintiffs claim fraud or misrepresentation, they
'must state with particularity the circumstances constituting
the fraud.'"  Id. (quoting Fed. R. Civ. P. 9(b)).

　　　Put simply, the proposed amendments by Plaintiff fail to
come close to the pleading particularity required under Rule
9(b).  Plaintiff essentially avers that the student handbook
contains two policies espousing the "fact" that Harris School of
Business: (1) is committed to the success of every student; and
(2) will ensure that disabled students are not counseled toward
more restrictive career paths than non-disabled students.  Prop.
2d Am. Compl. ¶¶ 101-07.  Plaintiff alleges, as well, her
subjective belief that Defendants did not live up to these
representations.  With regard to the first policy, however,
Plaintiff does not, in her brief or in her Proposed Second
Amended Complaint, identify which conduct of Harris School of

Business amounted to "not being committed to the success of students."  Plaintiff's Proposed Second Amended Complaint contains many allegations concerning meetings with staff members of Harris School of Business over externship placement, additional classes being offered to help Plaintiff proceed with an externship, and alternative externship placements being arranged when others were full.  However, this Court cannot identify (and Plaintiff's briefing has not crystalized) what specific conduct amounts to fraud or misrepresentation.

With regard to the second policy – that Plaintiff would not be counseled to more restrictive career options than non-disabled students because of her disability – Plaintiff has not alleged how the career path to which she was counseled was more "restrictive" than her chosen path of phlebotomy.  Plaintiff has also not alleged how non-disabled students were counseled toward career paths at all, which would be essential to this conduct amounting to a fraud or misrepresentation.  Finally, Plaintiff has not alleged that her exclusion from the Labcorp externship or placement in a different externship was the result of her disability rather than an academic determination that she did not qualify for the internship.  In short, the Court has no way of knowing whether a fraud or misrepresentation could plausibly have occurred because Plaintiff has only made the vague and

conclusory allegation that Defendants "did not live up to" their representations concerning counseling.

As such, Plaintiff may – if she can in good faith – seek leave to amend the Amended Complaint and plead with particularity her NJCFA causes of action.  In noting that Plaintiff may seek leave to amend, the Court of course does not foreclose arguments concerning futility, bad faith, or delay in opposition.  Moreover, the Court reminds Plaintiff that the NJCFA does not allow actions based on mere puffery, a category one, if not both, of the above policies may fall into. <u>See, e.g.</u>, <u>Rodio v. Smith</u>, 123 N.J. 345, 351-352 (1991) ("You're in good hands with Allstate" is puffery and not actionable). Further, the Court reminds the Plaintiff that "[m]ere customer dissatisfaction does not constitute consumer fraud." <u>Hassler v. Sovereign Bank</u>, 644 F. Supp. 2d 509, 517 (D.N.J. 2009).  That said, such futility-based arguments are not before the Court, and are best discussed should Plaintiff seek to amend and should Defendants argue such amendments are futile.

## B. <u>Defendants' Request for Sanctions</u>

Finally, Defendants have moved for sanctions against Plaintiff under 28 U.S.C. § 1927, which provides that "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be

required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Id.

Defendants argue that Plaintiff's counsel, Mr. Kober, behaved "unreasonably and vexatiously" in responding to their pre-motion conference request.  In Defendants' initial letter, Defendants pointed out many of the pleading deficiencies in the initial complaint.  Plaintiff then sought this Court's leave to file an amended complaint, which this Court granted.  February 16, 2016 Order [Dkt. No. 14].  At that time, the Court remarked that permitting amendment was the proper course "particularly . . . given the woefully deficient allegations contained in the Complaint at this juncture."  Id.  Plaintiff filed an Amended Complaint, which, as the above analysis makes clear, failed to meaningfully address many of the basic pleading deficiencies Defendants have identified.  Defendants were then forced to bring the instant motion, in response to which Plaintiff finally conceded that several of the claims lacked any merit.

For instance, in the initial letter filed by Defendants, it was observed that Section 504 of the Rehabilitation Act only applied to recipients of federal aid, and thus a cause of action could not be stated against the Individual Defendants.  Defs.' Jan. 12, 2016 Ltr. at 2 & n.4.  In response, Plaintiff argued vaguely that "[i]t is obvious on the face of the Complaint that

40

Plaintiff alleges she was subjected to decision-making and
injurious acts on the part of the Individual Defendants.  The
issue raised herein by the Defendants requires the opportunity
for adequate briefing on the part of Plaintiff."  Pl.'s Jan. 22,
2016 Resp. at 1.  Plaintiff's Amended Complaint preserved the
cause of action under Section 504 against the Individual
Defendants.  Am. Compl. ¶ 105.  Yet, without argument, and
forcing Defendants to expend unnecessary resources, Plaintiff
conceded the cause of action against the Individual Defendants
in her opposition briefing.  Pl.'s Br. 2.  To summarize this
absurdity: (1) Plaintiff demanded briefing to demonstrate the
error in Defendant's relatively straightforward arguments that
some of Plaintiff's claims were not viable; (2) Plaintiff
received the opportunity to brief responses in opposition to the
same arguments; (3) Plaintiff instead conceded the claims.  This
is not how disputes are litigated.  Plaintiffs are expected to
understand whether it is at least arguable that their claim is
viable prior to dragging a defendant to Court to answer for
them.

   In response to Defendants' request for sanctions,
Plaintiff's counsel has filed a brief outlining his
understanding of the back-and-forth that occurred on these
claims.  He states that the upshot of his letter was a response
"saying, in so many words, that [Plaintiff] needed more time to

41

brief the issues raised by Defendants in their pre-motion letter."  Pl.'s Sur-Rep. at 2.  He also clarified that the request for amendment pertained only to the NJCFA claims, which would explain why, for instance, the non-viable Section 504 claim persisted in the Amended Complaint.  Ultimately, Mr. Kober seeks to excuse the inadequately pled claims by noting that "the amended complaint was filed <u>before</u> having a chance to do the research in order to respond to the issues raised by the pre-motion letter."  <u>Id.</u> at 3.  Perplexingly, he also reminds the Court that he filed the Amended Complaint before the deadline to do so, which only renders his failure to research identified flaws in his complaint more troubling.  In response to Plaintiff's admission that he filed the Amended Complaint without researching the non-NJCFA issues raised in Defendants' initial letter, Defendants in their reply briefing further request Rule 11 sanctions against Plaintiff's counsel because he presented to the Court a pleading, thereby representing "the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).

The Court is certainly troubled by the above conduct.  A neutral reading of the filings in this case shows that the Amended Complaint, for whatever reason, contained claims which

had no clear basis in law, even after that fact was pointed out
to him.  Further, counsel's labored explanation that he only
felt obligated to amend certain issues in his complaint, while
saving any legal research into other potentially faulty claims
for a later motion to dismiss undermines the obligation of
lawyers to have a good faith belief in their claims prior to
bringing them.

Nevertheless, at this stage, the Court declines to issue
monetary sanctions under 28 U.S.C. § 1927 or Federal Rule of
Civil Procedure 11.  Counsel's explanation of his thought
process in proceeding as he did, disturbing as it is, assuages
the Court that he did not, at the least, act in bad faith or
with a vexatious motive of multiplying the proceedings.  The
Court does take this opportunity to formally admonish him for
the above-described conduct in this case.  Mr. Kober's inability
to adequately research the claims prior to asserting them in the
Amended Complaint unquestionably caused Defendants the burden of
having to oppose those claims with a formal motion.  It also
caused this Court to expend judicial resources in the
administration of claims that, after several attempts by the
Defendants and the Court to sift through them, even Mr. Kober
now concedes lack merit.[17]  The Court hopes that this

---

[17] The Court additionally notes that to the extent the costs
associated with opposing the ill-fated claims becomes a part of

43

admonishment is a sufficient sanction under Rule 11 at this
stage, and counsel will be guided accordingly in future filings.

**V.** **CONCLUSION**

As outlined above, the Court GRANTS Defendants' partial
motion to dismiss.  Furthermore, the Court DENIES Plaintiff's
motion seeking leave to file the Proposed Second Amended
Complaint.  Finally, the Court DENIES Defendants' motion for
fees under Rule 11 and 28 U.S.C. § 1927.

As the case now stands at a procedural crossroads, the
Court also takes this opportunity to note the still-active
claims that are currently a part of the operative pleading, the
Amended Complaint.  Because dismissal was not sought,
Plaintiff's causes of action against Harris School of Business
for violation of Section 504 of the Rehabilitation Act (Count I)
and Title III of the ADA (Count II) shall proceed.  Likewise,
Plaintiff's claim for violation of the New Jersey Law Against
Discrimination (Count V) shall proceed.  The remaining claims
have been conceded or dismissed.  To the extent Plaintiff wishes
to amend her allegations, she may of course do so, subject to
opposition by Defendants.

---

a prevailing-party fees motion by either party at the conclusion
of the case, the Court may consider the impact of Mr. Kober's
conduct on the reasonable fees to be awarded.

DATED: October 28, 2016


                                        s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        UNITED STATES DISTRICT JUDGE